# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| MICHAEL LAMAR, | |
| Plaintiff, | Civil Action No. |
| v. | |
| BIG RIG LENDING, LLC AND FIRST AMERICAN TITLE LENDING OF GEORGIA, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Michael Lamar files this Complaint against Defendants Big Rig Lending, LLC ("Big Rig") and First American Title Lending of Georgia, LLC ("First American," and collectively with Big Rig, "Defendants"). Plaintiff shows the Court as follows:

## INTRODUCTION

1. This case concerns racial discrimination and retaliation. Plaintiff claims that he was fired by Defendants within days of contacting Human Resources and alleging, orally and in writing, racial discrimination by Plaintiff's immediate supervisor and Big Rig's Vice President of Operations. Plaintiff's discrimination

1

complaints followed months of unwarranted and racially-motivated antagonism towards Plaintiff by management, during which Plaintiff (1) was the only African-American performing collections work for Big Rig, and (2) consistently was a top performer. Plaintiff's supervisor and Big Rig's Vice President of Operations did not display similar animosity towards Plaintiff's white coworkers, whom Plaintiff regularly outperformed.

2. Plaintiff asserts a retaliation claim against Defendants under 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

3. This court has federal-question jurisdiction over Plaintiff's Section 1981 claim, pursuant to 28 U.S.C. § 1331.

4. Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Newnan Division of the Northern District of Georgia, where Defendants regularly do business.

## PARTIES

5. Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; he submits himself to the jurisdiction of this court.

6. Plaintiff was hired by First American in approximately August 2018 as an Internal Auditor. In approximately September 2019, Plaintiff began working for Big Rig, an affiliate of First American, as a Senior Collections Coordinator, which position he held until on or about December 7, 2020.

7. Big Rig is a Georgia limited-liability company with its Principal Office Address at 3855 North Ocoee Street, 5th Floor, Cleveland, Tennessee 37312 .

8. First American is a Tennessee limited-liability company with its Principal Office Address at 3855 North Ocoee Street, 5th Floor, Cleveland, Tennessee 37312.

9. Defendants may be served via their Registered Agent, National Registered Agents, Inc., at 289 S. Culver Street, Lawrenceville, Georgia 30046.

10. On information and belief, Big Rig is a wholly-owned subsidiary of First American.

11. On information and belief, Defendants have interrelated and integrated operations and management and jointly employed Plaintiff. On further information and belief, Defendants jointly controlled the terms and conditions of Plaintiff's employment.

## STATEMENT OF FACTS

12. Plaintiff is African-American.

13. Plaintiff was hired by First American as an Internal Auditor in approximately August 2018. While in that role, Plaintiff was provided a company vehicle, which he received a First American location in McDonough, Georgia, that was near to his home.

14. In September 2019, First American arranged for Plaintiff to transfer to Big Rig as a Senior Collections Officer. As a Senior Collections Officer, Plaintiff's primary duties were to seek payment from debtors on delinquent and charged-off loans.

15. Plaintiff worked remotely, pursuant to which he was provided remote office space, as well as a landline phone and an email account that he used to communicate with management.

16. Between September 2019 and December 2020, Plaintiff consistently led his department in funds recovered from delinquent or charged-off accounts.

17. As part of Plaintiff's compensation, he received commissions on the funds he recovered. Although the funds were nominally discretionary and dispensed at the direction of Big Rig's management, the commissions were designed to be, and in fact were, a core part of Plaintiff's compensation.

18. In approximately September 2019, Big Rig hired Jason Connell ("Connell"), who is white, as Collections Manager, in which role he directly supervised Plaintiff.

19. Connell, in turn, reported to Big Rig's Vice President of Operations, Mike Fraebel ("Fraebel"), who also is white. Connell and Fraebel were long-time friends and associates of one another at the time that Big Rig hired Connell.

20. Between September 2019 and December 2020, Connell consistently performed poorly. However, upon information and belief, Connell was never disciplined by Fraebel or Big Rig for his poor performance.

21. Between September 2019 and December 2020, Plaintiff experienced increasing animosity from Connell and Fraebel. More specifically, Connell and Fraebel communicated with Plaintiff in a more aggressive and/or condescending manner than they did with Plaintiff's peers, all of whom were white.

22. As an example, prior to the COVID-19 pandemic, Plaintiff visited the Big Rig office in Dalton, Georgia, twice a month. During these visits, Plaintiff saw that Connell permitted Plaintiff's white coworkers to, *inter alia*, take coffee breaks and chat with one another at their cubicles. In contrast, if Plaintiff left his desk for any reason, including to use the restroom, Connell required and expected Plaintiff to let Connell know.

23. As another example, Connell expressed frustration with the fact that he had difficulty getting in touch with Plaintiff on occasion. However, as Plaintiff explained to Connell, Connell (and Fraebel) almost always attempted to contact Plaintiff only via his personal cell phone, rather than his office landline. Further, Plaintiff worked diligently to remain reachable whenever an issue was discovered.

24. As a third example, in approximately September 2020, Plaintiff was told by Fraebel that Plaintiff had to return his company vehicle within 90 days.

25. At that time, that Connell and Fraebel knew that the company vehicle was Plaintiff's only means of transportation. Nevertheless, Plaintiff agreed to return the vehicle as directed.

26. Plaintiff informed Fraebel that he would need assistance dropping the vehicle off because Big Rig's desired drop-off location was over two hours away from Plaintiff's home, and Plaintiff would not have a way to get back home.

27. Plaintiff asked whether he could drop the vehicle off at a First American location in McDonough that was near to his home. Fraebel did not respond to Plaintiff's request.

28. Although Plaintiff expressed his willingness to return the vehicle in approximately September 2020, the issue was not brought up again until mid-November 2020, within the 90-day deadline that Plaintiff originally had been

given.  At that time, Fraebel told Plaintiff that he had until December 1, 2020, to return the vehicle.

29. Plaintiff confirmed that he would drop off the vehicle as directed but again stated that he would need assistance getting home if he had to leave it at Big Rig's preferred location.  Plaintiff again asked whether he could leave the vehicle at the First American location close to Plaintiff's home.  Fraebel refused Plaintiff's request and told Plaintiff that he would follow up with Big Rig's CEO, Randy McCoy ("McCoy").

30. Plaintiff did not hear from Fraebel against regarding the return of the company vehicle until on or about December 2, 2020, at which time Fraebel emailed Plaintiff and (1) complained about alleged issues communicating with Plaintiff, and (2) threatened to terminate Plaintiff's employment and report the vehicle stolen if he did not return it to the local First American location—the same location that Plaintiff had originally suggested as a possible solution in approximately September 2020.

31. Fraebel did not state in his December 2 email that the decision to terminate Plaintiff's employment already had been made; rather, Fraebel merely stated that Plaintiff's failure to comply with Fraebel's directives could lead to Plaintiff's termination.

32. On December 2, 2020, Plaintiff returned the vehicle to the First American location in McDonough, as instructed.

33. That same day, December 2, 2020, Plaintiff contacted Big Rig's Human Resources ("HR") Manager, Madeline Hollis, after he received Fraebel's email concerning the return of the company vehicle.

34. During that phone call, Plaintiff expressly alleged that Fraebel and Connell were, and had been, discriminating against him on account of his race. Hollis told Plaintiff that he should have raised his concerns before, but Plaintiff stated that he had been worried that he would be retaliated against by Fraebel and Connell.

35. Plaintiff's December 2, 2020 communication with Hollis constituted protected activity under Section 1981.

36. Following the December 2 phone call, Hollis sent Plaintiff an email confirming that he had alleged discrimination during their conversation earlier that morning. McCoy and Big Rig's President, Jeff Mowery, were copied on that email.

37. On Monday, December 7, 2020, McCoy and Hollis spoke with Plaintiff. Plaintiff anticipated that the meeting would be used to address the race discrimination allegations that he had made to Hollis on December 2, 2020.

38. However, McCoy did not address Plaintiff's race discrimination allegations but instead told Plaintiff that he was being terminated for failing to meet performance expectations.

39. In December 2020, Plaintiff consistently had been and remained a top performer in his department.

40. In actuality, Defendants terminated Plaintiff's employment in retaliation for engaging in protected activity under Section 1981, to wit, his December 2, 2020 opposition to race discrimination.

41. Defendants' actions and/or inactions in retaliating against Plaintiff for opposing racial discrimination were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Section 1981.

42. Defendants acted with the specific intent to harm Plaintiff.

43. Due to Defendants' violations of Section 1981, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, humiliation, and other indignities.

## COUNT I
### Retaliation in Violation of Section 1981

44. Plaintiff and Defendants were parties to an employment agreement pursuant to which, *inter alia*, Plaintiff performed work for Defendants and was compensated for his services.

45. Plaintiff performed his contractual obligations.

46. Section 1981 prohibits Defendants from retaliating against Plaintiff because he opposed, objected to, and/or complained about race discrimination prohibited by Section 1981.

47. Prior to his termination, Plaintiff engaged in protected activity under Section 1981 during his December 2, 2020 conversation with HR Manager Hollis, during which he expressly alleged that Defendants were discriminating against him based on his race.

48. Defendants retaliated against Plaintiff for engaging in protected activity under Section 1981 by terminating his employment.

49. Defendants' retaliatory conduct violated Section 1981.

50. By retaliating against Plaintiff for engaging in protected activity under Section 1981, Defendants caused Plaintiff to incur damages that include lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

51. Defendants acted intentionally, maliciously, and/or recklessly with respect to Plaintiff's rights under Section 1981.

52. Pursuant to Section 1981, Plaintiff is entitled to damages against Defendants, including back pay and lost benefits, compensatory and punitive

damages, attorneys' fees and costs, and all other relief recoverable under Section 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)   A declaratory judgment that the practices of Defendants complained of herein are unlawful under Section 1981;

b)   Full back pay from the date that Plaintiff was terminated, taking into account all raises and other compensation to which Plaintiff would have been entitled but for Defendants' illegal actions, and all associated benefits of employment, with prejudgment interest thereon;

c)   Front pay to compensate Plaintiff for lost future wages and benefits;

d)   Compensatory damages in an amount to be determined by the jury;

e)   Punitive damages in an amount to be determined by the jury;

f)   Reasonable attorneys' fees and costs; and

g)   All other equitable and other further relief as the Court deems just and proper.

Respectfully submitted this 27th day of September 2021.

*/s/ Michael D. Forrest*
Michael David Forrest
Georgia Bar No. 974300
Justin M. Scott
Georgia Bar No. 557463
Scott Employment Law, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

Counsel for Plaintiff
